IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-50214
_____


UNITED STATES OF AMERICA

Plaintiff - Appellee


v.

TAKIA LYNNEA CAMPBELL

Defendant - Appellant


_____

Appeal from the United States District Court
for the Western District of Texas
(A-91-CR-57-2)
_____

July 22, 1996

Before REAVLEY, KING, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Takia Lynnea Campbell appeals his conviction after a jury trial for conspiracy to possess with intent to distribute cocaine base, possessing with intent to distribute cocaine base, and carrying a firearm in relation to the commission of these offenses. We affirm.


## I. BACKGROUND

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

1

Campbell was arrested during a drug raid on a residence in Austin, Texas. Austin Police Officer David Jarrell, a street-level narcotics officer, received information from a confidential informant that the residence was being used to sell crack cocaine. With $20 provided by Jarrell, the informant went to the door of the residence and bought a rock of crack cocaine from a black male who matched the description of codefendent Cortney Lucien. The informant delivered the substance to Jarrell. Testing confirmed that the substance was crack cocaine and Jarrell applied for a search warrant.

With a team of five officers and two supervisors, Jarrell executed the search warrant on September 5, 1989 at approximately 9:40 p.m. Using a battering ram to burst through the front door, the officers entered the residence screaming "Freeze. Police. Don't move." Jarrell testified that he was the first person through the door. According to Jarrell, he saw Campbell rising from a couch and reaching for an object that Jarrell perceived to be a weapon. Jarrell yelled "Gun, gun, gun," pushed Campbell down on the couch, and handcuffed him.

Officer Servando Varela, another one of the first officers to enter the house, noticed a man running from the bathroom and pursued him into the bedroom. Officer John Nelson followed Varela and took custody of the man, later identified as Lucien. Lucien carried an identification card from the Malibu Grand Prix amusement park with his picture and the name Antoine Watson, an alias that Lucien used. On the coffee table, Nelson found a

2

second identification card from Malibu Grand Prix with Campbell's picture. Lucien had a set of keys in his pocket that fit the front door. Nelson also took custody of an application for a lease rental agreement in the name of Antoine Watson and a lease application signed by Tony Richman.

Varela returned to the living room and saw a Colt .45 caliber automatic pistol sticking out from the third cushion of the couch where Campbell was seated. He called out to Officer Eddie Booth to seize the weapon. Booth indicated two other locations in the room where a 9 mm. automatic and a .38 caliber pistol were found. One gun was on the floor near the kitchen, and another gun was on the floor by the couch. All of the guns were loaded and fully functional.[1]

Varela found 2.25 grams of powdered cocaine in a video tape case on top of a stereo speaker across from the couch. He also found 0.39 ounces of marijuana and some marijuana cigarette butts in another tape case on the coffee table. Eight or nine individual packets of crack cocaine were found in the toilet and approximately $600 in cash was found in the bathroom sink.

While the officers searched the residence, someone knocked at the front door. When Jarrell opened the door he found a man standing there with a $20 bill in his hand. The man indicated that he was there to see a friend and claimed that he just

---

At trial, the Government presented testimony and a photograph of the weapons because the Colt .45 had been returned to its owner, and the other two weapons were mistakenly destroyed by the evidence room.

happened to be holding the $20 bill. Jarrell took the $20 and turned over the man to one of the other officers.

The officers arrested Campbell and Lucien on September 5, 1989. The two were charged with second-degree felony drug possession in Texas state court. These charges were later dismissed to allow for prosecution by the United States Attorney. On May 9, 1991, Lucien and Campbell were indicted by a federal grand jury on three related counts: conspiring to possess a controlled substance with intent to distribute, under 21 U.S.C. §§ 841(a)(1) & 846; possession of a controlled substance with intent to distribute, under 21 U.S.C. § 841(a)(1); and use of a firearm in relation to possession of a controlled substance with intent to distribute, under 18 U.S.C. § 924(c). On January 9, 1992, four days prior to trial, the indictment against Campbell was dismissed by motion of the United States.

On January 18, 1994, the grand jury issued a superseding indictment charging essentially the same three counts as the previous indictment. Campbell filed a "Motion to Dismiss with Prejudice for Lack of Speedy Trial and Incorporated Memorandum in Support Thereof." Campbell asserted that his due process rights had been violated by the Government's intentional act to gain a tactical advantage and asked that the charges be dismissed.[2] The district court held an evidentiary hearing and denied Campbell's motion. Campbell then entered into an agreement to plead guilty

---

Campbell made a hybrid argument combining the Fifth Amendment due process claim of pre-indictment delay and a Sixth Amendment speedy trial claim.

4

to a one-count, superseding information charging misprision of a felony in violation of 18 U.S.C. § 4.  Finding the plea agreementtoo lenient, the district court rejected it and set the case for trial.

Trial was held on January 4 and 5, 1995.  The jury found Campbell guilty on all three counts.  The district court imposed concurrent terms of imprisonment of 78 months for the first two counts, a 60-month term of imprisonment for the third count to run consecutively to the concurrent terms, a four-year term of supervised release, and a special assessment of $150.  Campbell filed a timely notice of appeal.

## II. DISCUSSION

Campbell raises several issues on appeal.  These issues may be expressed as follows:  (1) whether the evidence adduced at trial was sufficient to support the crack cocaine convictions; (2) in light of the supervening Supreme Court opinion in *Bailey v. United States*, 116 S. Ct. 501 (1995), whether the evidence was sufficient to support the firearm conviction and whether the district court's charge to the jury in this regard was error; (3) whether the pre-indictment delay was a violation of Campbell's right to due process; and (4) whether Campbell was denied effective assistance of counsel in violation of the Sixth Amendment.  We address these issues seriatim.

A.   The Cocaine Charges

Campbell argues that all of the evidence establishing

5

conspiracy to possess and possession of cocaine with intent to distribute pertains solely to Lucien.  He contends that the evidence shows only that he was acquainted with Lucien and Richman, that he was present at the residence where the informant purchased a rock of crack cocaine, and that he was sitting on the living room couch when the search was executed.  Campbell argues that the evidence failed to establish that he intended to conspire with Lucien to possess the crack cocaine, that he had knowledge of the crack cocaine found in the bathroom, or that he had dominion and control over the crack cocaine or the residence.

After conviction by a jury, the scope of our review of the sufficiency of the evidence is narrow.  *United States v. Salazar*, 66 F.3d 723, 728 (5th Cir. 1995).  We must affirm if a reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Harris*, 25 F.3d 1275, 1279 (5th Cir.), *cert. denied*, 115 S. Ct. 458 (1994).

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt.  A jury is free to choose among reasonable constructions of the evidence.

*United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc), *aff'd*, 462 U.S. 356 (1983).  We must consider all the evidence, all reasonable inferences drawn therefrom, and all credibility determinations, in the light most favorable to the verdict.  *United States v. Resio-Trejo*, 45 F.3d 907, 911 (5th

6

Cir. 1995).

To support a conviction in a drug-conspiracy prosecution, "the government must prove beyond a reasonable doubt (1) the existence of an agreement between two or more persons to violate the narcotics laws, (2) that the defendant knew of the agreement, and (3) that he voluntarily participated in the agreement." *United States v. Maltos*, 985 F.2d 743, 746 (5th Cir. 1992). "The agreement, a defendant's guilty knowledge and a defendant's participation in the conspiracy all may be inferred from the development and collocation of circumstances." *Id.* (internal quotation marks and citations omitted). "Although presence at the scene and close association with those involved in a conspiracy are insufficient factors alone, they are nevertheless relevant factors for the jury." *United States v. Leed*, 981 F.2d 202, 205 (5th Cir.), *cert. denied*, 113 S. Ct. 2971 (1993).

To establish the offense of possession of a controlled substance with intent to distribute, the Government must prove beyond a reasonable doubt that Campbell had (1) knowledge, (2) possession of a controlled substance, and (3) an intention to distribute it. *United States v. Garza*, 990 F.2d 171, 174 (5th Cir.), *cert. denied*, 114 S. Ct. 332 (1993). "Possession may be actual or constructive and may be joint among several defendants." *United States v. Cardenas*, 9 F.3d 1139, 1158 (5th Cir. 1993) (citation omitted), *cert. denied*, 114 S. Ct. 2150 (1994). Constructive possession is the "knowing exercise of, or the knowing power or right to exercise dominion and control over

7

the proscribed substance." *Id.* (internal quotation marks and citations omitted). Intent to distribute may be inferred from possession of a quantity of drugs too large for ordinary consumption. *United States v. Pineda-Ortuno*, 952 F.2d 98, 102 (5th Cir.), *cert. denied*, 504 U.S. 928 (1992). Distribution includes acts in furtherance of transfer, sale, or delivery. *United States v. Lechuga*, 888 F.2d 1472, 1478 (5th Cir. 1989).

Viewing the evidence in the case at bar in the light most favorable to the verdict, we find that a reasonable jury could have inferred that Campbell conspired to possess and did possess the crack cocaine with the intent to distribute. In addition to Campbell's presence in the residence and his relationship with Lucien and Richman, his knowledge of and participation in the operation could be inferred from the circumstances. There was money in the bathroom sink, a large quantity of crack cocaine in the toilet, and there were guns and drugs in the living room. At least one person came to the door of the residence to purchase crack cocaine and another was discovered at the door with a $20 bill in his hand. There was a pistol under the cushion where Campbell was sitting and there was testimony that Campbell reached for the pistol when the officers burst into the room. Making a move for the gun, in particular, indicates that Campbell was a knowing participant in the drug conspiracy and that he actively aided and abetted the possession with intent to distribute the crack cocaine. We thus conclude that the evidence was sufficient to support Campbell's conviction on each of the

drug charges.

B.    The Firearm Charge

     1. Sufficiency of the Evidence

     Campbell argues that the evidence was insufficient to convict him of the firearm charge under 28 U.S.C.§ 924(c)(1). "Section 924(c)(1) requires the imposition of specified penalties if the defendant, `during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm.'"[3] *Bailey v. United States*, 116 S. Ct. 501, 505 (1995). Campbell argues, in his initial brief, that the firearm charge failed because there was insufficient evidence to support the underlying drug charges.  In light of our determination that there was sufficient evidence to support the underlying drug charges, this argument is without merit.  In his reply brief, however, Campbell bases his insufficiency of the evidence claim as to the firearm charge on the holding in *Bailey*.

     The Supreme Court decided *Bailey* on December 6, 1995, approximately one year after Campbell was convicted but while his direct appeal was pending.  It is well-settled that criminal defendants are entitled to the benefit of changes in the law

---

          The superseding indictment charged Campbell with "carry and use" of the three firearms in the conjunctive.  The district court correctly stated the statute as requiring "use or carry" but instructed the jury that the Government must prove "use and carry." In a § 924(c) case, "a disjunctive statute may be pleaded conjunctively and proved disjunctively." *United States v. Pigrum*, 922 F.2d 249, 253 (5th Cir.), *cert. denied*, 500 U.S. 936 (1991) (internal quotation marks and citations omitted).  Thus, even though the indictment charged Campbell using the word "and," it was possible and proper for the Government to obtain a conviction by proving that Campbell either used or carried the firearm.  *Id*.

9

announced while their cases are on direct review.  *See, e.g.,*
*Griffith v. Kentucky*, 479 U.S. 314, 327-28 (1987); *United States*
*v. Rivas*, 85 F.3d 193, 195 n.1 (5th Cir. 1996).  Therefore,
*Bailey* is applicable to this case.

Holding that mere possession does not constitute "use" for
purposes of § 924(c)(1) analysis, *Bailey* significantly curtailed
the reach of the statute.  *Bailey*, 116 S. Ct. at 508.
Consolidating two cases for appeal, the Court found that the
evidence was insufficient in each to support conviction for use
of a firearm under § 924(c)(1).  *Id.* at 509.  In the first case,
when police arrested the defendant after a routine traffic stop,
they found cocaine in the passenger compartment of his car and a
loaded pistol locked in the trunk.  The police arrested the
second defendant in a separate incident when they found cocaine
and an unloaded Derringer in a locked trunk in her bedroom closet
while executing a search warrant.  Reversing both convictions,
the Supreme Court held that "§ 924(c)(1) requires evidence
sufficient to show an active employment of the firearm by the
defendant, a use that makes the firearm an operative factor in
relation to the predicate offense."  *Id.* at 505.

The Court explained that such active employment "includes
brandishing, displaying, bartering, striking with, and most
obviously, firing or attempting to fire, a firearm."  *Id.* at 508.
Even referring to a firearm in one's possession, if "calculated
to bring about a change in the circumstances of the predicate
offense is a 'use.'"  *Id.*  On the other hand, the *Bailey* Court

10

reasoned, Congress did not intend to punish the mere possession of a firearm during and in relation to a drug offense, or Congress would have done so.  The Court concluded, therefore, that "[a] defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds.  Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession."  *Id.*

In the instant case, Campbell contends that the evidence did not establish that he exercised "active employment" of a firearm as required under *Bailey*.  We disagree.  Campbell's visible movement toward the pistol hidden in the couch constituted active employment of the weapon.  The use requirement of § 924(c)(1), as illuminated by *Bailey*, is satisfied "when the defendant reaches for the weapon while being apprehended. . . .  Such use of a firearm constitutes 'active employment' of a firearm in connection with an underlying drug trafficking offense."  *United States v. Johnson*, No. 94-11131, 1996 WL 339196, at *3-4 (5th Cir. June 19, 1996).  Under the circumstances present in this case, Campbell used the firearm when he reached for it.[4]

From the evidence presented, the jury reasonably could find

---

[4]    In *United States v. Garcia*, No. 95-20170, 1996 WL 316490, at *8 (5th Cir. June 12, 1996), we found that the evidence that the defendant reached for a pistol when confronted by officers was insufficient to show that he used the pistol.  However, *Garcia* is distinguishable from *Johnson* and the case at bar, because the only evidence that Garcia was reaching for a pistol tucked in his waistband and hidden under his shirt was the testimony of an officer who admitted during cross-examination that he did not know why Garcia moved his hand toward his waist.  *Garcia*, No. 95-20170, 1996 WL 316490, at *8.

that Campbell reached for -- actively employed -- the pistol during and in relation to the underlying drug crimes. Thus, we find that there was sufficient evidence to support the firearm conviction under § 924(c)(1).[5]

2.   Jury Instructions

In his reply brief, Campbell also argues that, in light of *Bailey*, the district court's instruction to the jury on using and carrying a firearm was erroneous. Moreover, because *Bailey* altered controlling precedent, Campbell contends that he should not be prejudiced for his failure to object at trial.

Prior to *Bailey*, conviction in this Circuit under § 924(c)(1) did not "depend on proof that the defendant had actual possession of the weapon or used it in any affirmative manner, but only that the firearm was available to provide protection to the defendant in connection with his engagement in drug trafficking." *United States v. Willis*, 6 F.3d 257, 264 (5th Cir.

---

[5]   The superseding indictment charged Campbell under § 924(c) as to all three firearms discovered at the residence: "[S]pecifically one Colt .45 caliber pistol Mark IV, series 70, Serial No. 70B33921, one Arminius Titan Tiger .38 caliber revolver Serial No. 0520020 and one Star Model BM 9mm caliber pistol Serial No. 1729524." To find Campbell guilty under § 924(c)(1), it was necessary only that the jury determine that he used or carried one of these weapons during or in relation to the crack-cocaine crimes. 18 U.S.C. § 924(c)(1).

At trial, the prosecution focused on the .45 caliber pistol. Jarrell testified that Campbell reached for this pistol when the officers entered the residence. A reasonable jury could agree that it was the .45 caliber pistol that was used by Campbell. Nonetheless, as we stated in *United States v. Correa-Ventura*, 6 F.3d 1070 (5th Cir. 1993), to convict a defendant under § 924(c) in a case such as this, there does not have to be unanimous agreement among the jurors about which of the weapons seized from the residence was used in commission of the drug offenses. *Correa-Ventura*, 6 F.3d at 1077-82.

1993) (citation and brackets omitted).  As such, at the time of trial, the district court's instructions were correct as given:

> [T]he Government is not required to prove that the defendant actually fired a weapon or brandished it at someone in order to prove "use" as that term is used in these instructions.  However, the Government must prove some relationship or connection between the crime and the use and carrying of the firearm.  Therefore, you must be convinced beyond a reasonable doubt that the firearm played a role or facilitated in the commission of the drug offense, or had the potential to do so, such as for safeguarding or protecting an illegal drug transaction.  In other words, you must find that the firearm was an integral part of the drug offense charged.

As discussed above, however, this instruction is contrary to the Supreme Court's holding in *Bailey*, which states that "the inert presence of a firearm, without more, is not enough to trigger § 924(c)(1)."  116 S. Ct. at 508.  Conviction under the statute requires evidence sufficient to indicate an "active employment" of the firearm by the defendant.  *Id.* at 505.  In the instant case, as with the sufficiency-of-the-evidence issue regarding the firearm charge, *Bailey* is applicable to the jury-instruction issue because *Bailey* was decided during the pendency of this appeal.  *Griffith*, 479 U.S. at 327-28.

Federal Rule of Criminal Procedure 52(b) provides an appellate court a limited power to correct forfeited errors that were not raised in the district court,[6] including instructional errors.  *United States v. Olano*, 507 U.S. 725, 731 (1993).  Generally, when a defendant fails to object to a jury instruction

---

[6]     Rule 52(b) provides:  "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  Fed. R. Crim. P. 52(b).

13

before the district court, we review the instruction challenged on appeal for plain error. *United States v. Flores*, 63 F.3d 1342, 1347 (5th Cir. 1995), *petition for cert. filed*, (U.S. Mar. 14, 1996) (No. 95-8346). In this regard, the Supreme Court has construed Rule 52(b) to require a showing that (1) there was error and no waiver; (2) the error was plain; and (3) that the error affected the defendant's substantial rights -- i.e., that it was prejudicial. *Id.* at 731-35. As long as these three elements are satisfied, the reviewing court has discretion to correct an otherwise forfeited error when the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 736 (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

This Circuit has not clearly resolved whether plain error analysis applies in the context of a supervening Supreme Court decision -- i.e., when a Supreme Court decision announces a new constitutional rule not recognized at the time of trial. Most circuits apply plain-error review to unobjected-to errors of this kind. *See, e.g., United States v. Ramirez-Ferrer*, 82 F.3d 1149, 1151 (1st Cir. 1996); *United States v. Baker*, 78 F.3d 1241, 1246 (7th Cir. 1996); United *States v. Lopez*, 71 F.3d 954, 960-61 (1st Cir. 1995), *cert denied*, No. 95-8569, 1996 WL 183363 (U.S. Jun. 17, 1996). At least one circuit, however, appears to allow direct harmlessness review of an issue "where a supervening decision has changed the law in appellant's favor and the law was so well-settled at the time of trial that any attempt to

14

challenge it would have appeared pointless." *United States v. Baucum*, 66 F.3d 362, 363 (D.C. Cir. 1995).

Harmless-error analysis focuses on the effect of the alleged error on the verdict actually returned by the jury. *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993). Such error does not require reversal: Rule 52(a) instructs the reviewing court to disregard harmless error.[7] Moreover, in harmless-error review, as contrasted with plain-error review under Rule 52(b), the Government bears the burden of persuasion with respect to prejudice. *Olano*, 507 U.S. at 734.

In this case, we need not decide whether issues arising in the context of a supervening decision require plain-error or harmless-error analysis because the outcome is the same under either standard. Whether we apply a Rule 52(b) plain-error standard of review or a Rule 52(a) harmless-error standard, Campbell's jury-instruction argument fails.

Assuming *arguendo* that the instructional error is determined to be plain error, it nevertheless did not affect Campbell's substantial rights and does not cast into doubt the fairness, integrity, or public reputation of the proceedings. Campbell's participation in the underlying crack-cocaine crimes, as well as his use of a firearm in terms of § 924(c)(1), was supported by evidence that he reached for the Colt .45 as officers entered the residence. We find that, on the facts presented to the jury, a

---

[7] Rule 52(a) provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Fed. R. Crim. P. 52(a).

15

different instruction would not have affected the outcome. *See, e.g., United States v. Baker*, 78 F.3d at 1247 (finding no plain error in use instruction because a properly instructed jury still would have convicted defendant of carrying firearm); *United States v. Masotto*, 73 F.3d 1233, 1241-42 & n.5 (2d Cir. 1996) (affirming conviction where evidence was sufficient, despite improper instruction on active employment), *petition for cert. filed*, 64 U.S.L.W. 3765 (U.S. May 1, 1996) (No. 95-1794).

Furthermore, based on the way the Government argued and submitted the case to the jury, the instructional error was harmless. In order to convict Campbell of the underlying drug charges, the jury necessarily found that Campbell reached for the firearm. Notwithstanding the erroneous jury instruction as to § 924(c)(1), the jury's determination that Campbell "used" the pistol was based on Campbell's affirmative employment of the weapon, and not on the mere presence of guns in the residence and the potential for their use. An instructional error that pertains to an element of the offense is harmless "if the evidence of guilt is so overwhelming that the error could not have contributed to the jury's decision to convict." *United States v. Malone*, 837 F.2d 670, 672 (5th Cir. 1988) (quoting *Healy v. Maggio*, 706 F.2d 698, 701 (5th Cir.), *cert. denied*, 464 U.S. 984 (1983)); *see also Pope v. Illinois*, 481 U.S. 497, 502 (1987) (reviewing instruction in obscenity prosecution for harmless error because it did not affect verdict); *United States v. Parker*, 73 F.3d 48, 53 (5th Cir.) (finding instructional error

16

harmless where there was no "reasonable likelihood that the jury applied the instructions in a way that violates the Constitution"), *petition for reh'g en banc granted*, 80 F.3d 1042 (5th Cir. 1996).

Although the jury received a broader instruction than currently permitted under *Bailey*, we believe that the evidence of Campbell's use of the firearm fell squarely within the scope of *the Bailey* rule. Because the narrower instruction now required by *Bailey* fits the factual theory advanced by the prosecution as well as the facts proved, we find that there is no reasonable likelihood that the jury's verdict would have been different had the correct instruction been given. *Cf. Pineda-Ortuno*, 952 F.2d at 104 (finding that including words "use" and "used" in jury instructions was harmless where defendants were necessarily convicted of carrying as charged in indictment); *United States v. Ortega*, 859 F.2d 327, 330-31 (5th Cir. 1988) (concluding that erroneous inclusion of constructive possession instruction was harmless -- not plain error -- where case was based on actual possession theory), *cert. denied*, 489 U.S. 1027 (1989); *see also United States v. Giraldo*, 80 F.3d 667, 678 (2d Cir. 1996) (finding that erroneous "use" instruction was harmless where instruction would have been correct with respect to "carry" and evidence proved carrying), *petition for cert. filed*, (U.S. May 8, 1996) (No. 95-9278); *United States v. Manning*, 79 F.3d 212, 216 (1st Cir. 1996) (affirming conviction under § 924(c)(1) because, although evidence was insufficient to prove "use" under *Bailey*,

17

it did prove carrying).  Thus, to the extent that the jury

instruction was rendered error by the supervening Supreme Court

decision in *Bailey*, we conclude that such error was harmless

under the particular facts of this case.

C.    Pre-indictment Delay

Campbell contends that the district court erred in denying

his motion to dismiss his indictment for pre-indictment delay.

He argues that the twenty-four month delay between the dismissal

of the initial federal indictment and the filing of the

superseding indictment constituted a violation of his right of

due process.

"[T]he Supreme Court has held that the Due Process Clause of

the Fifth Amendment protects an accused against pre-indictment

delay."  *United States v. Beszborn*, 21 F.3d 62, 65 (5th Cir.),

*cert. denied*, 115 S. Ct. 330 (1994).  The burden of proving such

a due-process violation is on the defendant.  *Id.*  The defendant

must prove that (1) the prosecutor intentionally delayed the

indictment to gain a tactical advantage or for some other

bad-faith purpose,[8] and (2) the defendant incurred actual

prejudice as a result of the delay.  *United States v. Crouch*, 84

F.3d 1497, 1500 (5th Cir. 1996) (en banc).  The district court

---

Relying on *United States v. Crouch*, 51 F.3d 480, 483 (5th Cir. 1995), Campbell argues that to prevail on this issue he was not required to show deliberate tactical delay by the Government. We reversed *Crouch*, however, on rehearing en banc. *United States v. Crouch*, 84 F.3d 1497, 1514 (5th Cir. 1996) (en banc) (holding that, to violate the Due Process Clause, pre-indictment delay must have been "intentionally undertaken by the government for the purpose of gaining some tactical advantage").

found that Campbell failed to carry his burden of showing an intentional delay to gain a tactical advantage, and furthermore, that Campbell failed to demonstrate actual prejudice.

We apply a clearly erroneous standard to findings of fact -- such as whether the prosecution, in bad faith, intentionally delayed an indictment. *Id.* at 66. After reviewing the record in this case, we find that Campbell failed to satisfy the first requisite of his due-process claim: He did not demonstrate that the prosecutor intentionally delayed the indictment in bad faith or to gain a tactical advantage. Thus, we find meritless Campbell's allegation that he was denied due process, and we conclude that the district court did not err in rejecting Campbell's motion to dismiss for pre-indictment delay.

D.    Ineffective Assistance of Counsel

Campbell contends that he was denied effective assistance of counsel because his counsel failed to properly raise the issue of pre-indictment delay. Campbell points out that at trial, although asserting "due process rights," his counsel inarticulately framed the issue of pre-indictment delay in terms of the Sixth Amendment right to a speedy trial. For this reason, because Campbell felt that his counsel did not fully develop how he had been prejudiced by the pre-indictment delay, and because his counsel did not re-urge his motion to dismiss when he had the opportunity, Campbell maintains that he was inadequately represented.

"The general rule in this circuit is that a claim of

19

ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." *United States v. Higdon*, 832 F.2d 312, 313-14 (5th Cir. 1987), *cert. denied*, 484 U.S. 1075 (1988). We have resolved such claims only when the record is sufficiently developed to allow a fair evaluation of the merits of the claim. *See United States v. Blankenship*, 923 F.2d 1110, 1117 (5th Cir.), *cert. denied*, 500 U.S. 954 (1991). In the instant case, because we have addressed the district court's denial of Campbell's motion to dismiss for pre-indictment delay, we believe that we can evaluate fairly the merits of Campbell's ineffective-assistance-of-counsel claim.

For his part, Campbell must prove two components to support his claim: (1) that his counsel made errors that were so serious that they deprived him of his Sixth Amendment guarantee of assistance of counsel; and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 689-90. In order to show prejudice, the defendant must demonstrate that his counsel's errors were so serious as to deprive him of a trial whose result is fair or reliable. *Lockhart v. Fretwell*, 113 S. Ct. 838, 844 (1993).

Assuming *arguendo* that Campbell's counsel could have urged more effectively the motion to dismiss, Campbell, nonetheless, fails to satisfy the second requirement of the *Strickland* test -- he has not demonstrated prejudice. To establish that a deficient performance prejudiced the defense, the defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. As discussed above, Campbell has demonstrated no prejudice resulting from the pre-indictment delay; Campbell made no showing of how the delay rendered his trial any less fair or its result any less reliable than had there been no delay. As with each of the previous issues raised by Campbell in this appeal, we conclude that his Sixth Amendment ineffective-assistance-of-counsel claim is without merit.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.